UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CV 8189

------------------------------------------------------------X
JOSE BAUTISTA, and, MARIA FELIX BAUTISTA,
and MARY CRUZ BAUTISTA, an infant under the age
of Eighteen, by her Mother and Natural Guardian,
MARY CRUZ BAUTISTA,

                          Plaintiffs

                          **COMPLAINT**
                          **JURY TRIAL DEMANDED**

-against-

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT
OF CORRECTION and CORRECTION OFFICERS JOHN DOE
1 through JOHN DOE 10, and NEW YORK CITY DEPARTMENT OF
CORRECTIONS SUPERVISORY OFFICERS FIRST NAME
UNKNOWN and LAST NAME UNKNOWN IN THEIR INDIVIDUAL
CAPACITIES AND WARDEN ROBERT N. CRIPPS, RONALD JORGENSEN,
ASSISTANT DEPUTY WARDEN DANIELLE JOHNSON, CARMINE
LABRUZZO, MICHAEL HOURIHANE, LARRY DAVIS, SR.,
DORA SCHRIRO and FLORENCE FINKLE.

                          Defendants.
------------------------------------------------------------X

## NATURE OF THE ACTION

**FIRST:** The nature of Plaintiff JOSE BAUTISTA claims are to recover monetary damages from all defendants, including, but not limited to punitive damages against CORRECTION OFFICERS JOHN DOE 1 THROUGH 10 individually, for violation of constitutional rights, pursuant to 42 USC § 1983 and under supplemental State law prohibitions against assault and battery which occurred while the plaintiff was incarcerated and beaten to within an inch of his life rupturing his intestines and causing permanent serious physical injuries without lawful reason. Plaintiffs MARIA FELIX BAUTISTA, and MARY CRUZ BAUTISTA,

1

an infant under the age of eighteen, by her Mother and Natural Guardian MARY FELIX BAUTISTA, seek compensatory damages for loss of consortium and loss of services.

**SECOND**:   Plaintiff JOSE BAUTISTA seeks compensatory and punitive damages for violation of plaintiff's civil rights pursuant to 42 U.S.C. Sections 1983 and 1986 and an award of costs, disbursements and attorney fees under 42 U.S.C. Sec. 1988. Plaintiff also seeks compensatory under State law tort claims against all the defendants named herein and compensatory and punitive damages against all the individually named defendants named herein.

### JURISDICTION and VENUE

**THIRD**: This action is predicated upon violations of plaintiff's civil rights protected under the United States Constitution inclusive of the FOURTH, EIGHTH and FOURTEENTH Amendments to the United States Constitution and actionable pursuant to 42 U.S.C. Sections 1983 and 1986. This Court has supplemental jurisdiction over the State law tort claims. Venue is properly laid in the Southern District of New York under 28 U.S.C. 1391(a) (b) and (c); Rikers Island where the events occurred is within the Southern District of New York and is the District where the claim arose.

**FOURTH**: Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343.

**FIFTH**: The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. Section 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY DEMAND

**SIXTH**: Plaintiff respectfully demands a jury by trial of all issues in the mater pursuant to Fed. R. Civ. P. 38(b).

## CONDITIONS PRECEDENT

**SEVENTH**: Plaintiff has duly complied with conditions precedent to this lawsuit by duly and properly filing a notice of claim within ninety (90) days of the occurrences giving rise to this lawsuit.

**EIGHTH**: That on or about March 27, 2013, and within ninety (90) days after the accrual of the claim sued upon herein, Plaintiff served upon THE CITY OF NEW YORK a duly executed Notice of Claim.

**NINTH**: That more than thirty (30) days have elapsed since the service of said Notices of Claim and that said claim remains unadjusted and that the defendant has wholly refused, failed and neglected to make any adjustment of same.

**TENTH**: That this action was commenced within one (1) year and ninety (90) days from the date of the claim accrued and within one (1) year from the date the claim accrued for purposes of 42 U.S.C. Section 1986.

## PARTIES

**ELEVENTH**: Plaintiff JOSE BAUTISTA was and continues to be a resident of the State of New York, County of Kings.

**TWELVTH**: Plaintiff MARIA FELIX BAUTISTA was and continues to be a resident of the State of New York, County of Kings.

**THIRTEENTH**: Infant Plaintiff MARY CRUZ BAUTISTA was and continues to be a resident of the State of New York, County of Kings.

**FOURTEENTH**: Defendant, THE CITY OF NEW YORK is a municipal corporation duly authorized and existing under and by virtue of the laws of the State of New York.

**FIFTEENTH**: Defendant, THE CITY OF NEW YORK, has established and maintains a Department of Correction which is an agency of the defendant, THE CITY OF NEW YORK.

**SIXTEENTH**: The New York City Department of Correction acts as the agent for THE CITY OF NEW YORK in the area of law enforcement and supervision of incarcerated persons in the jails of the City of New York, including the jails at Rikers Island Correctional Facility and more particularly Anna M Kross Center ("AMKC") for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a corrections force and the employment of correctional officers as said risk attaches to the public

consumers of the services provided by the New York City Department of Correction (hereinafter, "DOC").

**SEVENTEETH**: At all times relevant, defendant THE CITY OF NEW YORK employed the individual defendant CORRECTION OFFICERS JOHN DOE 1 through JOHN DOE 10.

**EIGHTEENTH**: At all times relevant, defendant CITY OF NEW YORK employed the CORRECTION OFFICERS JOHN DOE 1 through JOHN DOE 10 out of the AMKC.

**NINETEENTH**: At all times relevant, CORRECTION OFFICERS JOHN DOE 1 through JOHN DOE 10 were duly appointed and acting correction officers of THE CITY OF NEW YORK.

**TWENTIETH**: At all times relevant, defendant CORRECTION OFFICERS JOHN DOE 1 through JOHN DOE 10 were acting under the color of State Law.

**TWENTY-FIRST**: At all times relevant, defendant CORRECTION OFFICERS JOHN DOE 1 through JOHN DOE 10 were acting both in their individual and official capacities as employees of defendant CITY OF NEW YORK. As uniformed corrections officers, these defendants are supposed to protect inmates including the plaintiff herein JOSE BAUTISTA. Correction officers are required to carry out their responsibilities in a manner consistent with the legal mandates that govern the operation of the DOC and its jails, including the written DOC directives and orders governing the use of force and the reporting of the use of force.

5

**TWENTY-SECOND**: Defendant CORRECTION OFFICERS JOHN DOE 1 through JOHN DOE 10 are sued individually and in their official capacity.

**TWENTY-THIRD**: The true names and shield numbers of the individual defendants are not currently known to the plaintiffs.[1] However, the individual defendants were employees or agents of the NYC DOC on the date of the incident described below. Accordingly, they are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law Section 50-k.

**TWENTY-FOURTH :** The Law Department is hereby put on notice (a) that plaintiffs intend to name those officers as defendants in an amended pleading once their true names and shield numbers become known to them and (b) that the Law Department should immediately begin preparing their defenses in this action.

**TWENTY-FIFTH**: At all times relevant, defendant THE CITY OF NEW YORK employed the individual defendants NEW YORK CITY DEPARTMENT OF CORRECTION SUPERVISORY OFFICERS FIRST NAME UNKNOWN and LAST NAME UNKNOWN.

**TWENTY-SIXTH**: The supervisory officers include Captains whose first and last names and shield numbers are currently unknown; plaintiff will amend this Complaint to state the true name(s) when they become known. These captains, have direct, first line supervisory responsibilities over the correction officers assigned to AMKC, including responsibility for

---

[1] By referring to the individual defendants as "John Doe," plaintiffs make no representation concerning their gender. Further, by referring to these defendants as "Correction Officer(s)," plaintiffs make no representation concerning their actual ranks within the New York City Department of Correction.

6

taking appropriate measures to ensure and protect the personal safety of inmates including the plaintiff. These responsibilities are required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC and its jails, including the written DOC directives and orders governing the use of force and the reporting of the use of force. At all times referred to in this Complaint, all of the above supervisory officers were and are acting within the scope of their employment as employees of the DOC and acting under color of state law. These defendants are sued in their individual capacities.

**TWENTY-SEVENTH**: At all times relevant, defendant THE CITY OF NEW YORK employed the NEW YORK CITY DEPARTMENT OF CORRECTION SUPERVISORY OFFICERS FIRST NAME UNKNOWN and LAST NAME UNKNOWN out of the jail at Rikers Island Correctional Facility known as Anna M Kross Correctional Facility ("AMKC" or "C-95).

**TWENTY-EIGHTH**: Defendant Danielle Johnson was at all times referred to in this complaint, and upon information and belief still is, an Assistant Deputy Warden employed by DOC and assigned to Department jails. As Assistant Deputy Warden, defendant Johnson serves as a tour Commander and reviews and reviewed every use of force incident that occurs in her commands on her tour. She was and is responsible for the immediate reporting of all use of force incidents, for assigning an investigating-supervisor, for approving all facility use of force investigation reports, and for recommending discipline for misconduct. At all times referred to in this Complaint, Defendant Johnson was and is acting within the scope of her employment as an employee of the Department and acting under color of state law. She is sued in her individual capacity.

**TWENTY-NINTH**: Defendant Robert Cripps was the Warden at AMKC, a Department jail. As Warden, Defendant Cripps was and is responsible for supervision of correction officers,

7

captains, and other supervisors with respect to the care, custody, and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including the written Department directives and orders governing the use of force and the reporting of use of force. As Warden, Defendant Cripps was and is provided on a daily basis with all reports of use of force, allegations of use of force, and other violent incidents in his jail. He was and is responsible for reviewing and approving these reports before forwarding them to the Integrity and Policy Division of the Department, as well as conducting investigations in his facility and recommending discipline for misconduct. At all times referred to in this Complaint; Defendant Cripps was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant Cripps is sued in his individual capacity.

**THIRTIETH**: Defendant Ronald Jorgensen was in June and July of 2011 the Deputy Warden for Security at AMKC, and since December 2011, has been employed at DOC headquarters. As Deputy Warden for Security, Defendant Jorgensen was responsible for supervision of correction officers, captains and other supervisors with respect to the care, custody and control of inmates confined in the jail. His responsibilities additionally included investigating use of force incidents, investigating staff members' roles in use of force incidents, and making recommendations for discipline in connection with use of force incidents. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including the written Department directives and orders governing the use of force and the reporting of use of force. At all times referred to in this Complaint, Defendant Jorgensen was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant Jorgensen is sued in his individual capacity.

**THIRY-FIRST:** Defendant Carmine LaBruzzo was, in June and July of 2011 Deputy Chief of Security of DOC, and is currently Deputy Chief of Department of DOC. As Deputy Chief of Security and as Deputy Chief of Department, Defendant LaBruzzo was, and is, responsible for monitoring and addressing all operational issues in Department jails pertaining to the safety and security of inmates and staff. These responsibilities included and include the tracking of violent incidents and the formulation of responses designed to protect the personal safety of Department staff and inmates in its custody. As Deputy Chief of Security and as Deputy Chief of Department, Defendant LaBruzzo has been and is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times referred to in this Complaint, Defendant LaBruzzo was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant LaBruzzo is sued in his individual and official capacities.

**THIRTY-SECOND:** Defendant Michael Hourihane was in June and July of 2011 Deputy Chief of Department, and since December 2011 has been Chief of Department. As Deputy Chief of Department, Defendant Hourihane was responsible for monitoring and addressing all operational issues in Department jails pertaining to the safety and security of inmates and staff. These responsibilities included the tracking of violent incidents and the formulation of responses designed to protect the personal safety of Department staff and inmates in its custody. As Deputy Chief of Department, Defendant Hourihane was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. Presently, as Chief of Department, Hourihane is the highest ranking uniformed member of the department and is responsible for the supervision, oversight, and discipline of the uniformed security staff, including the supervisory security staff, in all the Department jails. He is also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Hourihane is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times

9

referred to in this Complaint, Defendant Hourihane was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant Hourihane is sued in his individual and official capacities.

**THIRTY-THIRD**: Defendant Larry Davis, Sr. was in June and July of 2011 the Chief of Department. As Chief of Department, Davis was the highest-ranking uniformed member of the Department and was responsible for the supervision, oversight, and discipline of the uniformed security staff, including the supervisory security staff, in all the Department jails. He was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Davis was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times referred to in this Complaint, Defendant Davis was acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant Davis is sued in his individual and official capacities.

**THIRTY-FOURTH**: Defendant Dora Schriro was at all times referred to in this Complaint, and still is, the Commissioner of DOC. As Commissioner, she has been and is the chief executive officer of the Department, responsible, consistent with the legal mandates governing the Department, for the management and control of all Department jails, and for all matters relating to the selection, supervision, promotion, training, and discipline of the uniformed staff, including the supervisory security staff, of the Department's jails. Defendant Schriro has been and is also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, Schriro has been and is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times referred to in this Complaint, Defendant Schriro was and is acting within the scope of her employment as an employee of the Department and acting under color of state law. Defendant Schriro is sued in her individual and official capacities.

THIRTY-FIFTH:  Notwithstanding the unconstitutional and unlawful conduct, the actions of the individual defendants were taken in the course of their duties and were incidental to their otherwise lawful functions as agents, servants and employees of the CITY OF NEW YORK.

THIRTY-SIXTH:  The individual defendants' acts hereinafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of the plaintiffs' rights; furthermore, the acts and or omissions of the supervisory defendants evinced a deliberate indifference to the safety of the plaintiff and said deliberate indifference was a proximate cause of the injuries to plaintiff and more particularly to his Constitutionally protected rights under 42 U.S.C. Section 1983.

THIRTY-SEVENTH:  The aforesaid defendants, at all relevant times were acting under the color of state law in assaulting, battering and violating the constitutional rights of Plaintiff JOSE BAUTISTA.

## NOTICE OF THE UNCONSTITUTIONAL POLICY AND OF THE USE OF EXCESSIVE FORCE
## DELIBERATE INDIFFERENCE AVERMENTS
## FACTUAL AVERMENTS[2]

THIRTY-EIGHTH:  The supervisory staff within the Department jails, including Defendants Warden Cripps, Deputy Warden of Security Jorgensen, and the command structure of the

---

[2] The averments concerning the unconstitutional policy and use of excessive force/deliberate indifference averments in the instant complaint are taken from the Amended Complaint in the matter of *Nunez et. al. v. City of New York, et. al.*, 11-cv-5845 (LTS)(THK). Additionally it should be noted that the averments of paragraphs 28 through 34 inclusive are likewise taken from *Nunez*. Plaintiff in the instant matter adopts each of these averments.

11

Department of Correction (Defendants Schriro, Finkle, Hourihane, Davis, LaBruzzo) know that the pattern and practice of physical abuse as detailed in prior and current class action lawsuits and in the myriad of lawsuits involving excessive force, more fully identified herein, continues unabated. The supervisory staff and the command structure and the defendant correction officers know that the investigations into use of force will be a sham as it was in this case. The sham investigation policy and-practice with respect thereto, existed and still exists in the City's jails. Their failure to curb such conduct despite their affirmative duty to do so, and their specific policies and acts that have created and now perpetuate such institutionalized conduct, including the Unconstitutional Use of Force Practice, constitute deliberate indifference to the rights and safety of the inmates in their care and custody, including plaintiff JOSE BAUTISTA. These Defendants' conduct is a substantial factor in the continuation of the Unconstitutional Use of Force Practice and the proximate cause of the constitutional violations alleged in this Complaint.

**THIRTY-NINTH**: The Department of Correction operates under a single, system-wide written use of force policy Directive 5006 (the "Written Policy"). The Department trains all of its staff at a single Training Academy subject to a uniform curriculum. There is one centralized Integrity and Policy Division (formerly called the Investigation Division) that is responsible for uniformly investigating all reports of the staffs use of force under uniform procedures. There is a similar centralized Division that is responsible for conducting all of the administrative prosecutions in the few instances where the Department concludes unnecessary and excessive force has been used. This Division also has the authority to decline to prosecute or negotiate a pica-bargain with a Department employee.

**FORTIETH**: Administratively, the Department is organized with a paramilitary chain of

command. The central office consists of the Commissioner, Chief of Department, and other top administrators. There are three Supervising Wardens, each of whom has supervisory authority over several of the jails and other commands (e.g., the Transportation Division). Wardens and Deputy Wardens are routinely transferred among facilities. The uniformed staff is also routinely transferred from jail to jail or to non-jail command posts throughout the city system. Staff who are promoted are transferred to new-commands within the Department jails following their promotion. Officers who are known to have used unnecessary and excessive force in one command are often just transferred by the Department higher-ups to another command where they continue to have inmate contact, so the same systemic problems continue to occur.

### Supervisors Receive Extensive information Documenting the Extent and Severity of Excessive Force in the City's Jails

**FORTY-FIRST**: The Commissioner, the Deputy Commissioner of Integrity and Policy, the former and current Chiefs of Department, the former and current Deputy Chiefs of Department, the former Deputy Chief of Security and the current Assistant Chief of Security—Defendants Schriro, Finkle, Davis, Hourihane, and LaBruzzo —have known and (with respect to those who are current Department officials) do know the number, frequency, and severity of use of force incidents in city jails, as well as the names of the staff involved, and know that inmates continue to be at risk of unnecessary and excessive force at the hands of uniformed staff. Each of these central office supervisors receives and/or received daily compilation reports from Department commands documenting violent incidents, including reports of staff use of force. These "24-hour reports," which are circulated throughout the Department, contain brief summaries of use of force incidents. For years these summaries have documented, and continue to document, the routine application of injurious force to inmates by staff members under

13

circumstances which often suggest that the staff accounts are fabricated to cover up brutality and other misconduct. Defendants Cripps, as Warden of AMKC, Jorgensen, as Deputy Warden of Security of AMKC, was and is consistently apprised of the frequency and severity of inmates' injuries from violent encounters with correction staff in his command. As Warden, Deputy Warden of Security (Jorgensen), and Assistant Deputy Warden (Johnson), each is responsible for reviewing and approving the reports of staff use of force before these reports were and are forwarded to the Integrity and Policy division for central office investigation. These use of force reports routinely document the infliction of serious injuries on inmates by staff. Supervisors' failure to properly address the unnecessary and excessive use of force, despite the information contained in these reports, reflects the unwillingness of those supervisors to question correctional staff conduct, even when it is proscribed by the Written Policy. In these and other ways described herein, these Defendants created and perpetuated the unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

## Supervisors Fail to Adequately Investigate Reports of Staff Use of Force

**FORTY-SECOND**: Defendant Finkle, the Deputy Commissioner of Integrity and Policy, and the investigative division that she heads, systematically fail to conduct meaningful investigations into uses of force by DOC staff. The investigative division routinely fails to conduct investigations as required by the Investigations Manual promulgated after the <u>Ingles</u> [3] litigation. Where the investigative division does conduct investigations, it fails to follow its own guidelines, routinely crediting correction officer accounts that are implausible on their face,

---

[3] *Ingles* v. *Toro*, No. 01 Civ. 827 (S.D.N.Y.) (use of force throughout the jails of the City of New York.