UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
JOSE BAUTISTA,

                           Plaintiff,

           -against-

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT
OF CORRECTION; C.O. DAIN DEALLIE, Shield 18770 in his
individual and official capacity; C.O. MARVIN CHARLES,
Shield 17619 in his individual and official capacity; C.O KEVIN
BARNABY Shield 177767 in his individual and official capacity;
C.O FITZGERALD DAVID Shield 5802 in his individual and
official capacity;  C.O. RAMOS, Shield 17575 in his individual and
official capacity; C.O. RAYON SIMMONDS, Shield 9320 in his
individual and official capacity; CAPTAIN GABRIELLA SMALLS,
Shield 5802 in her individual and official capacity; WARDEN
CARLTON NEWTON, in his individual and official capacity;
CAPTAIN McCLEOD, Shield 1653 in her individual and official
capacity; WARDEN THOMAS HALL in his individual and official
capacity; WARDEN DANIELLE JOHNSON in her individual and
official capacity;  CARMINE LABRUZZO in his individual and
official capacity;  MICHAEL HOURIHANE in his individual and
official capacity; LARRY DAVIS, SR., in his individual and
official capacity; ASSISTANT COMMISSIONER SABINA
BLASKOVIC, in her individual and official capacity; RUBEN
BENITEZ, Shield 27, in his individual and official capacity;
SEAN JONES, Shield16 or 65 in his individual and official capacity;
EVELYN A. MIRABAL in her individual and official capacity;
DEPUTY COMMISSIONER THOMAS BERGDALL in his
individual and official capacity; ASSISTANT COMMISSIONER
DIANA LOGAN, in her individual and official capacity; DORA
SCHRIRO in her individual and official capacity; FLORENCE
FINKLE in her individual and official capacity; C.O.s JOHN
DOE 1 through C.O. JOHN DOE 10 in their individual and official
capacity; and NEW YORK CITY DEPARTMENT OF
CORRECTIONS SUPERVISORY OFFICERS FIRST NAME
UNKNOWN and LAST NAME UNKNOWN in their individual
and official capacity

                                Defendants.
--------------------------------------------------------------------------------x

**DOCKET NO.: 13-CV-08189
AKH-JCF**

**THIRD AMENDED
COMPLAINT**

**JURY TRIAL DEMANDED**

## NATURE OF THE ACTION

**FIRST:** The nature of Plaintiff JOSE BAUTISTA claims are to recover monetary damages from all defendants, including, but not limited to punitive damages against CORRECTION OFFICER (C.O.) DAIN DEALLIE, Shield 18770, C.O. MARVIN CHARLES Shield 17619, C.O. KEVIN BARNABY Shield 177767, C.O. FITZGERALD DAVID Shield 5802, C.O. RAMOS, Shield 17575; C.O. RAYON SIMMONDS,SHIELD 9320;   CAPTAIN GABRIELLA SMALLS, SHIELD 5802; AND each of the defendants who are herein named individually , for violation of plaintiff's constitutional rights, pursuant to 42 USC § 1983  and under supplemental State law prohibitions against assault and battery which occurred while the plaintiff  was incarcerated and beaten to within an inch of his life rupturing his intestines and causing permanent serious physical injuries without lawful reason.

**SECOND:**  Prior hereto, Plaintiff filed a Complaint on January 7, 2014.

**THIRD:** Plaintiff's First Amended Complaint was filed prior to Defendants having filed a responsive pleading on January 21, 2014.

**FOURTH:** A Second Amended Complaint was filed on February 24, 2014.

**FIFTH:** This Third Amended Complaint is filed to add individually named Correction Officers and Supervisory Officers and officials with the New York City Department of Correction.

**SIXTH:** This Third Amended Complaint is timely filed pursuant to this Court's Civil Case Management Plan of March 28, 2014.

**SEVENTH:** Plaintiff  JOSE BAUTISTA seeks compensatory and punitive damages for violation of plaintiff's civil rights pursuant to 42 U.S.C. Sections  1983 and 1986 and an award of costs, disbursements and attorney fees under 42 U.S.C. Sec. 1988. Plaintiff also seeks

compensatory damages under State law tort claims against all the defendants named herein and compensatory and punitive damages against all the individually named defendants named herein.

## JURISDICTION and VENUE

**EIGHTH:** This action is predicated upon violations of plaintiff's civil rights protected under the United States Constitution inclusive of the FOURTH, EIGHTH and FOURTEENTH Amendments and actionable pursuant to 42 U.S.C. Sections  1983 and 1986. This Court has supplemental jurisdiction over the State law tort claims. Venue is properly laid in the Southern District of New York under 28 U.S.C. 1391(a) (b) and (c); Rikers Island, where the events occurred, is within the Southern District of New York and is where the claim arose.

**NINTH:** Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343.

**TENTH:** The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. Section 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY DEMAND

**ELEVENTH:** Plaintiff respectfully demands a jury by trial of all issues in the matter pursuant to Fed. R. Civ. P. 38(b).

## CONDITIONS PRECEDENT

**TWELFTH:** Plaintiff has duly complied with conditions precedent to this lawsuit by duly and properly filing a notice of claim within ninety (90) days of the occurrences giving rise to this lawsuit.

**THIRTEENTH:** That on or about March 27, 2013, and within ninety (90) days after the accrual of the claim sued upon herein, Plaintiff served upon THE CITY OF NEW YORK a duly executed Notice of Claim

**FOURTEENTH:** That more than thirty (30) days have elapsed since the service of said Notice of Claim and that said claim remains unadjusted and that the defendant has wholly refused, failed and neglected to make any adjustment of same.

**FIFTEENTH:** That this action was commenced within one (1) year and ninety (90) days from the date the claim accrued and within one (1) year from the date the claim accrued for purposes of 42 U.S.C. Section 1986.

## PARTIES

**SIXTEENTH:** Plaintiff JOSE BAUTISTA was and continues to be a resident of the State of New York, County of Kings.

**SEVENTEENTH:** Defendant, THE CITY OF NEW YORK is a municipal corporation duly authorized and existing under and by virtue of the laws of the State of New York.

**EIGHTEENTH:** Defendant, THE CITY OF NEW YORK, has established and maintains a Department of Correction which is an agency of the defendant, THE CITY OF NEW YORK.

**NINETEENTH:** The New York City Department of Correction acts as the agent for THE CITY OF NEW YORK in the area of law enforcement and supervision of incarcerated persons in the jails of the City of New York, including the jails at Rikers Island Correctional Facility and more particularly Otis Bantum Correctional Center ("OBCC") for which it is ultimately responsible.

**TWENTIETH:** Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a corrections force and the employment of correctional officers as said risk attaches to the public consumers of the services provided by the New York City Department of Correction (hereinafter, "DOC").

**TWENTY-FIRST:** At all times relevant, defendant THE CITY OF NEW YORK employed the individual defendant CORRECTION OFFICERS (C.O.) C.O. DAIN DEALLIE, Shield 18770, C.O. MARVIN CHARLES Shield 17619, C.O. KEVIN BARNABY Shield 177767, C.O. FITZGERALD DAVID Shield 5802, C.O. RAMOS, Shield 17575; C.O. RAYON SIMMONDS, Shield 9320; CAPTAIN GABRIELLA SMALLS, Shield 5802; AND C.O. JOHN DOE 1 THROUGH C.O. JOHN DOE 10.

**TWENTY-SECOND:** At all times relevant, defendant CITY OF NEW YORK employed the CORRECTION OFFICERS (C.O.) C.O. DAIN DEALLIE, Shield 18770, C.O. MARVIN CHARLES Shield 17619, C.O. KEVIN BARNABY Shield 177767, C.O. FITZGERALD DAVID Shield 5802, C.O. RAMOS, Shield 17575; C.O. RAYON SIMMONDS, Shield 9320; CAPTAIN GABRIELLA SMALLS, Shield 5802AND C.O. JOHN DOE 1 THROUGH C.O. JOHN DOE 10

out of Otis Bantum Correctional Center ("OBCC") a jail located on Riker's Island in the City and State of New York.

**TWENTY-THIRD:** At all times relevant, CORRECTION OFFICERS (C.O.) C.O. DAIN DEALLIE, Shield 18770, C.O. MARVIN CHARLES Shield 17619, C.O. KEVIN BARNABY Shield 177767, C.O. FITZGERALD DAVID Shield 5802, C.O. RAMOS, Shield 17575; C.O. RAYON SIMMONDS, Shield 9320; CAPTAIN GABRIELLA SMALLS, Shield 5802AND C.O. JOHN DOE 1 THROUGH C.O. JOHN DOE 10 were duly appointed and acting correction officers of THE CITY OF NEW YORK.

**TWENTY-FOURTH:** At all times relevant, defendant CORRECTION OFFICERS (C.O.) C.O. DAIN DEALLIE, Shield 18770, C.O. MARVIN CHARLES Shield 17619, C.O. KEVIN BARNABY Shield 177767, C.O. FITZGERALD DAVID Shield 5802, C.O. RAMOS, Shield 17575; C.O. RAYON SIMMONDS, Shield 9320; CAPTAIN GABRIELLA SMALLS, Shield 5802, AND C.O. JOHN DOE 1 THROUGH C.O. JOHN DOE 10 were acting both in their individual and official capacities as employees of defendant CITY OF NEW YORK.

**TWENTY-FIFTH:** As uniformed corrections officers, the CORRECTION OFFICER defendants are supposed to protect inmates including the plaintiff herein JOSE BAUTISTA.

**TWENTY-SIXTH:** Correction officers are required to carry out their responsibilities in a manner consistent with the legal mandates that govern the operation of the DOC and its jails, including the written DOC directives and orders governing the use of force and the reporting of the use of force.

**TWENTY-SEVENTH:** Defendant CORRECTION OFFICERS (C.O.) C.O. DAIN DEALLIE, Shield 18770, C.O. MARVIN CHARLES Shield 17619, C.O. KEVIN BARNABY Shield 177767, C.O. FITZGERALD DAVID Shield 5802, C.O. RAMOS, Shield 17575; C.O. RAYON SIMMONDS, Shield 9320; CAPTAIN GABRIELLA SMALLS, Shield 5802 AND C.O. JOHN DOE 1 THROUGH C.O. JOHN DOE 10 are sued individually and in their official capacity.

**TWENTY-EIGHTH:** The true names and shield numbers of some individual defendants are not currently known to the plaintiffs.[1] However, the individual defendants were employees or agents of the NYC DOC on the date of the incident described below. Accordingly, they and the named CORRECTION OFFICER defendants are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law Section 50-k.

**TWENTY-NINTH:** The Law Department is hereby put on notice (a) that plaintiffs reserve the right to name additional officers not already named as defendants in an amended pleading once their true names and shield numbers become known to them and (b) that the Law Department should immediately begin preparing their defenses in this action.

**THIRTIETH:** At all times relevant, defendant THE CITY OF NEW YORK employed the individual defendants NEW YORK CITY DEPARTMENT OF CORRECTION SUPERVISORY OFFICERS FIRST NAME UNKNOWN and LAST NAME UNKNOWN.

---

[1] By referring to some individual defendants as "John Doe," plaintiffs make no representation concerning their gender. Further, by referring to these defendants as "Correction Officer(s)," plaintiffs make no representation concerning their actual ranks within the New York City Department of Correction.

**THIRTY-FIRST:** The supervisory officers include Captains whose first and last names and shield numbers are currently unknown; plaintiff will amend this Complaint to state the true name(s) when they become known.

**THIRTY-SECOND:** The Captain defendants have direct, first line supervisory responsibilities over the correction officers assigned to OBCC, including responsibility for taking appropriate measures to ensure and protect the personal safety of inmates including the plaintiff.

**THIRTY-THIRD:** These responsibilities are required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC and its jails, including the written DOC directives and orders governing the use of force and the reporting of the use of force.

**THIRTY-FOURTH:** At all relevant times, CAPTAIN McCLEOD, SHIELD 1653 individually and in her official capacity conducted an "adjudication hearing" on January 23, 2013 regarding allegations made against the plaintiff for violations of DOC rules; defendant McCLEOD found that the plaintiff was guilty of infractions and by her failure to conduct a meaningful investigation into the transparently false reports tendered by Correction Officers was one of the supervisory personnel who was instrumental in the cover up of the acts complained of by the plaintiff Jose BAUTISTA; defendant McCLEOD is sued in her individual and her official capacity.

**THIRTY-FIFTH:** At all times referred to in this Complaint, all of the above supervisory officers were and are acting within the scope of their employment as employees of the DOC and acting under color of state law. These defendants are sued in their individual and official capacities.

**THIRTY-SIXTH:** At all times relevant, defendant THE CITY OF NEW YORK employed the NEW YORK CITY DEPARTMENT OF CORRECTION SUPERVISORY OFFICERS, CAPTAIN GABRIELLA SMALLS, SHIELD 5802; CAPTAIN McCLEOD SHIELD 1653; CARLTON NEWTON, WARDEN, OTIS BANTUM CORRECTIONAL CENTER ("OBCC"); WARDEN THOMAS HALL; WARDEN DANIELLE JOHNSON; LARRY DAVIS, SR., SEAN JONES, ADW SHIELD 16 or 65 OBCC; and, NEW YORK CITY DEPARTMENT OF CORRECTION SUPERVISORY OFFICERS FIRST NAME UNKNOWN and LAST NAME UNKNOWN out of the jail at Rikers Island Correctional Facility known as Otis Bantum Correctional Center ("OBCC") and as to defendant CAPTAIN McCLEOD SHIELD 1653 out of the jail at Rikers Island Correctional Facility known as Anna M. Kross Correctional Center (AMKC).

**THIRTY-SEVENTH:** Defendant SEAN JONES ADW SHIELD 16 or 65 OBCC, was Tour Commander on the date that the plaintiff was assaulted and battered at OBCC; as Tour Commander he was directly involved in the dissemination of 24 hour Use of Force reports and his duties included reporting to supervisory personnel in the Investigative Division of the DOC; his duties included collection of evidence and reporting on his findings; as a Tour Commander he participated in the process of determining who to interview and the techniques of interviewing witnesses; as Tour Commander he both reported to the Investigative Division and received instructions from the Investigative Division and supervisory personnel; he was aware of the failures to monitor the cell during the attempted suicide of plaintiff; he was aware that the officers who responded to the cell and officers stationed at the "bubble" or command post who were duty bound to notify medical personnel failed to call for medical assistance; as Tour Commander defendant JONES failed to recommend or impose discipline upon Correction Officers including

the named defendant's for excessive use of force; he further failed to ensure that the Correction Officers received proper training on use of force and mental health emergencies.

**THIRTY-EIGHTH:** Defendant Danielle JOHNSON was at all times referred to in this complaint, and upon information and belief still is, an Assistant Deputy Warden employed by DOC and assigned to Department jails. As Assistant Deputy Warden, defendant JOHNSON serves as a tour Commander and reviews and reviewed every use of force incident that occurs in her commands on her tour. She was and is responsible for the immediate reporting of all use of force incidents, for assigning an investigating-supervisor, for approving all facility use of force investigation reports, and for recommending discipline for misconduct. At all times referred to in this Complaint, Defendant JOHNSON was and is acting within the scope of her employment as an employee of the Department and acting under color of state law. She is sued in her individual capacity and in her official capacity.

**THIRTY-NINTH:** Defendant CARLTON NEWTON was the Warden at OBCC, a Department jail. As Warden, Defendant NEWTON was and is responsible for supervision of correction officers, captains, and other supervisors with respect to the care, custody, and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including the written Department directives and orders governing the use of force and the reporting of use of force. As Warden, Defendant NEWTON was and is provided on a daily basis with all reports of use of force, allegations of use of force, and other violent incidents in his jail. He was and is responsible for reviewing and approving these reports before forwarding them to the Integrity and Policy Division of the Department, as well as conducting investigations in his facility and

10

recommending discipline for misconduct. At all times referred to in this Complaint; Defendant NEWTON was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant NEWTON is sued in his individual and official capacities.

**FORTIETH:** Defendant Thomas HALL was the Warden at OBCC, a Department jail. As Warden, Defendant HALL was and is responsible for supervision of correction officers, captains, and other supervisors with respect to the care, custody, and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including the written Department directives and orders governing the use of force and the reporting of use of force. As Warden, Defendant HALL was and is provided on a daily basis with all reports of use of force, allegations of use of force, and other violent incidents in his jail. He was and is responsible for reviewing and approving these reports before forwarding them to the Integrity and Policy Division of the Department, as well as conducting investigations in his facility and recommending discipline for misconduct. At all times referred to in this Complaint; Defendant HALL was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant HALL is sued in his individual and official capacities.

**FORTY-FIRST:** Defendant Sabina BLASKOVIC was, at tall times referred to in this complaint, Assistant Commissioner for Investigations of DOC. Defendant BLASKOVIC is sued in her individual and official capacities.

**FORTY-SECOND:** Defendant Ruben BENITEZ, was, at all times referred to in this complaint, Deputy Director of the Investigative Division of DOC. Defendant BENITEZ is sued in his individual and official capacities.

**FORTY-THIRD:** Defendant Carmine LABRUZZO was, at all times referred to in this complaint, Deputy Chief of Security of DOC or Deputy Chief of Department of DOC. As Deputy Chief of Security and/or as Deputy Chief of Department, Defendant LABRUZZO was, and is, responsible for monitoring and addressing all operational issues in Department jails pertaining to the safety and security of inmates and staff. These responsibilities included and include the tracking of violent incidents and the formulation of responses designed to protect the personal safety of Department staff and inmates in its custody. As Deputy Chief of Security and as Deputy Chief of Department, Defendant LABRUZZO has been and is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times referred to in this Complaint, Defendant LABRUZZO was and is acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant LABRUZZO is sued in his individual and official capacities.

**FORTY-FOURTH:** Defendant Michael HOURIHANE was Chief of Department from about December of 2011 until the end of 2012, which was about ten days prior to the events that form the basis of this lawsuit. As Chief of Department, HOURIHANE was the highest ranking uniformed member of the department and was responsible for the supervision, oversight, and discipline of the uniformed security staff, including the supervisory security staff, in all the Department jails. He was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, HOURIHANE was provided on a daily basis with

reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times referred to in this Complaint, Defendant HOURIHANE was acting within the scope of his employment as an employee of the Department and acting under color of state law.  Defendant HOURIHANE is sued in his individual and official capacities.

**FORTY-FIFTH:** Defendant Larry DAVIS, SR. was the Chief of Department until August of 2011. As Chief of Department, DAVIS was the highest-ranking uniformed member of the Department and was responsible for the supervision, oversight, and discipline of the uniformed security staff, including the supervisory security staff, in all the Department jails. He was also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, DAVIS was provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times referred to in this Complaint, Defendant DAVIS was acting within the scope of his employment as an employee of the Department and acting under color of state law. Defendant DAVIS is sued in his individual and official capacities.

**FORTY-SIXTH:** Defendant Evelyn A. MIRABAL became the Chief of Department on December 31, 2012 and currently remains Chief of Department. As Chief of Department, MIRABAL is the highest-ranking uniformed member of the Department and is responsible for the supervision, oversight, and discipline of the uniformed security staff, including the supervisory security staff, in all the Department jails. She is also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, MIRABAL is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times referred to in this Complaint, Defendant MIRABAL

was acting within the scope of her employment as an employee of the Department and acting under color of state law. Defendant MIRABAL is sued in her individual and official capacities.

**FORTY-SEVENTH:** Defendant Florence FINKLE was at all times referred to in this Complaint, and still is, Deputy Commissioner of Integrity and Policy of DOC. As Deputy Commissioner, Defendant FINKLE was and is responsible for ordering and supervising the investigation of any and all incidents in which any employee of the Department uses force against any inmate. Defendant FINKLE has been and is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. She has been and is responsible for initiating recommendations for disciplinary action against officers and captains who engage in misconduct. At all times referred to in this Complaint, Defendant FINKLE was and is acting within the scope of her employment as an employee of the Department and acting under color of State law. Defendant FINKLE is sued in her individual and official capacities.

**FORTY-EIGHTH:** Defendant Deputy Commissioner Thomas BERGDALL was and is responsible for ordering and supervising the investigation of any and all incidents in which any employee of the Department uses force against any inmate. Defendant BERGDALL has been and is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. He has been and is responsible for initiating recommendations for disciplinary action against officers and captains who engage in misconduct. At all times referred to in this Complaint, Defendant BERGDALL was and is acting within the scope of his employment as an employee of the Department and acting under color of State law. Defendant BERGDALL is sued in his individual and official capacities.

**FORTY-NINTH:** Defendant Assistant Commissioner Diana LOGAN was and is responsible for ordering and supervising the investigation of any and all incidents in which any employee of the Department uses force against any inmate. Defendant LOGAN has been and is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. She has been and is responsible for initiating recommendations for disciplinary action against officers and captains who engage in misconduct. At all times referred to in this Complaint, Defendant LOGAN was and is acting within the scope of her employment as an employee of the Department and acting under color of State law. Defendant LOGAN is sued in her individual and official capacities.

**FIFTIETH:** Defendant Dora SCHRIRO was at all times referred to in this Complaint, and still is, the Commissioner of DOC. As Commissioner, she has been and is the chief executive officer of the Department, responsible, consistent with the legal mandates governing the Department, for the management and control of all Department jails, and for all matters relating to the selection, supervision, promotion, training, and discipline of the uniformed staff, including the supervisory security staff, of the Department's jails. Defendant SCHRIRO has been and is also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, SCHRIRO has been and is provided on a daily basis with reports of applications of force, allegations of unreported use of force, and other violent incidents in Department jails. At all times referred to in this Complaint, Defendant SCHRIRO was and is acting within the scope of her employment as an employee of the Department and acting under color of state law. Defendant SCHRIRO is sued in her individual and official capacities.

**FIFTY-FIRST:** Notwithstanding the unconstitutional and unlawful conduct, the actions of the individual defendants were taken in the course of their duties and were incidental to their

otherwise lawful functions as agents, servants and employees of the CITY OF NEW YORK.

**FIFTY-SECOND:** The individual defendants' acts hereinafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of the plaintiffs' rights; furthermore, the acts and or omissions of the supervisory defendants evinced a deliberate indifference to the safety of the plaintiff and said deliberate indifference was a proximate cause of the injuries to plaintiff and more particularly to his Constitutionally protected rights under 42 U.S.C. Section 1983.

**FIFTY-THIRD:** The aforesaid defendants, at all relevant times were acting under the color of state law in assaulting, battering and violating the constitutional rights of Plaintiff JOSE BAUTISTA.

## NOTICE OF THE UNCONSTITUTIONAL POLICY AND OF THE USE OF EXCESSIVE FORCE
### DELIBERATE INDIFFERENCE AVERMENTS
### FACTUAL AVERMENTS[2]

**FIFTY-FOURTH:** The supervisory staff within the Department jails, including Defendants Hall, and the command structure of the Department of Correction (Defendants Schriro, Finkle, Hourihane, Newton, Davis, LaBruzzo, Mirabel) know that the pattern and practice of physical abuse as detailed in prior and current class action lawsuits and in the myriad of lawsuits involving excessive force, more fully identified herein, continues unabated.

**FIFTY-FIFTH:** The supervisory staff and the command structure and the defendant

---

[2] The averments concerning the unconstitutional policy and use of excessive force/deliberate indifference averments in the instant complaint are taken from the Amended Complaint in the matter of *Nunez et. al.* v. *City of New York, et. al.*, 11-cv-5845 (LTS)(THK). Additionally it should be noted that the averments of paragraphs 28 through 42 inclusive are likewise taken from *Nunez*. Plaintiff in the instant matter adopts each of these averments.

correction officers know that the investigations into use of force will be a sham as it was in this case.

**FIFTY-SIXTH:** The sham investigation policy and practice with respect thereto, existed and still exists in the City's jails.

**FIFTY-SEVENTH:** The sham investigation policy and practice with respect thereto, existed and still exists in OBCC.

**FIFTY-EIGHTH:** The sham investigation policy and practice with respect thereto, existed and still exists at AMKC.

**FIFTY-NINTH:** Supervisory defendants' failure to curb such conduct despite their affirmative duty to do so, and their specific policies and acts that have created and now perpetuate such institutionalized conduct, including the Unconstitutional Use of Force Practice, constitute deliberate indifference to the rights and safety of the inmates in their care and custody, including plaintiff JOSE BAUTISTA.

**SIXTIETH:** These supervisory defendants' conduct is a substantial factor in the continuation of the Unconstitutional Use of Force Practice and the proximate cause of the constitutional violations alleged in this Complaint.

**SIXTY-FIRST:** The Department of Correction operates under a single, system-wide written use of force policy Directive 5006 (the "Written Policy").

**SIXTY-SECOND:** The Department trains all of its staff at a single Training Academy

subject to a uniform curriculum.

**SIXTY-THIRD:** There is one centralized Integrity and Policy Division (formerly called the Investigation Division) that is responsible for uniformly investigating all reports of the staffs use of force under uniform procedures.

**SIXTY-FOURTH:** There is a similar centralized Division that is responsible for conducting all of the administrative prosecutions in the few instances where the Department concludes unnecessary and excessive force has been used. This Division also has the authority to decline to prosecute or negotiate a plea bargain with a Department employee.

**SIXTY-FIFTH:** Administratively, the Department is organized with a paramilitary chain of command.

**SIXTY-SIXTH:** The central office consists of the Commissioner, Chief of Department, and other top administrators.

**SIXTY-SEVENTH:** There are three Supervising Wardens, each of whom has supervisory authority over several of the jails and other commands (e.g., the Transportation Division).

**SIXTY-EIGHTH:** Wardens and Deputy Wardens are routinely transferred among facilities.

**SIXTY-NINTH:** The uniformed staff is also routinely transferred from jail to jail or to non-jail command posts throughout the city system.

**SEVENTIETH:** Staff who are promoted may be transferred to new commands within the Department jails following their promotion.

**SEVENTY-FIRST:** Officers who are known to have used unnecessary and excessive force in one command are often just transferred by the Department higher-ups to another command where they continue to have inmate contact, so the same systemic problems continue to occur.

### Supervisors Receive Extensive information Documenting the Extent and Severity of Excessive Force in the City's Jails

**SEVENTY-SECOND:** The Commissioner, the Deputy Commissioner of Integrity and Policy, the former and current Chiefs of Department, the former and current Deputy Chiefs of Department, the former Deputy Chief of Security and the current Assistant Chief of Security— Defendants Schriro, Finkle, Hall, Davis, Hourihane, LaBruzzo, and Mirabal—have known and (with respect to those who are current Department officials) do know the number, frequency, and severity of use of force incidents in city jails, as well as the names of the staff involved, and know that inmates continue to be at risk of unnecessary and excessive force at the hands of uniformed staff.

**SEVENTY-THIRD:** Each of the above mentioned central office supervisors receives and/or received daily compilation reports from Department commands documenting violent incidents, including reports of staff use of force.

**SEVENTY-FOURTH:** These "24-hour reports," which are circulated throughout the Department, contain brief summaries of use of force incidents.

**SEVENTY-FIFTH:** For years these reports have documented, and continue to

document, the routine application of injurious force to inmates by staff members under circumstances which often suggest that the staff accounts are fabricated to cover up brutality and other misconduct.

**SEVENTY-SIXTH:** Defendants Newton and Hall, as Wardens of OBCC, were and are consistently apprised of the frequency and severity of inmates' injuries from violent encounters with correction staff under his command.

**SEVENTY-SEVENTH:** The Warden, Deputy Warden and Assistant Deputy Warden are each responsible for reviewing and approving the reports of staff use of force before these reports were and are forwarded to the Integrity and Policy division for central office investigation.

**SEVENTY-EIGHTH:** These use of force reports routinely document the infliction of serious injuries on inmates by staff.

**SEVENTY-NINTH:** Supervisors' failure to properly address the unnecessary and excessive use of force, despite the information contained in these reports, reflects the unwillingness of those supervisors to question correctional staff conduct, even when it is proscribed by the Written Policy.

**EIGHTIETH:** In these and other ways described herein, these Defendants created and perpetuated the unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

**Supervisors Fail to Adequately Investigate Reports of Staff Use of Force**

**EIGHTY-FIRST:** Defendant Finkle, the Deputy Commissioner of Integrity and Policy, and the Investigative Division that she heads, systematically fail to conduct meaningful investigations into uses of force by DOC staff.

**EIGHTY-SECOND:** The Investigative Division routinely fails to conduct investigations as required by the Investigations Manual promulgated after the Ingles [3] litigation.

**EIGHTY-THIRD:** Where the Investigative Division does conduct investigations, it fails to follow its own guidelines, routinely crediting correction officer accounts that are implausible on their face, inconsistent with inmates' injuries, or obviously manufactured collaboratively after the fact.

**EIGHTY-FOURTH:** The investigation into the assault on plaintiff JOSE BAUTISTA resulted in no discipline or prosecution of the officers whose egregious conduct amounted to a gang assault on a man who was not a threat to the officers and who was weakened from his suicide efforts and suffering an obvious medical and mental health emergency.

**EIGHTY-FIFTH:** The investigation into the assault on plaintiff JOSE BAUTISTA resulted in inadequate discipline of the officers whose egregious conduct amounted to a gang assault on a man who was not a threat to the officers and who was weakened from his suicide efforts and suffering an obvious medical and mental health emergency.

**EIGHTY-SIXTH:** On January 11, 2013, plaintiff JOSE BAUTISTA attempted suicide

---

[3] *Ingles* v. *Toro*, No. 01 Civ. 827 (S.D.N.Y.) (use of force throughout the jails of the City of New York).

by hanging in Pen 7 at OBCC.

**EIGHTY-SEVENTH:** Correction officers responded and found Mr. Bautista's legs being held by a fellow inmate to prevent him from a successful suicide.

**EIGHTY-EIGHTH:** Corrections officers directed the inmate who was holding Mr. Bautista away from Mr. Bautista; correction officers removed the makeshift noose and ligature so that the plaintiff fell to the ground and struck his head.  Plaintiff was then viciously pummeled with fists and kicks and elbow blows to the abdomen, face, upper and lower extremities, and testicles and all about his body.

**EIGHTY-NINTH:** Although the brutalization was captured on video, the Investigation Division did not refer the offending officers for criminal prosecution.

**NINETIETH:** The division routinely fails to credit inmate accounts, even where these accounts are supported by eyewitnesses and consistent with inmate injuries.

**NINETY-FIRST:** The division also regularly fails to take, review, and preserve crucial evidence, including witness accounts, videotape, medical records, and physical-evidence.

**NINETY-SECOND:** By implementing biased and incomplete investigative practices, consistently failing to act to punish or prevent wrongdoing and colluding with correction officers who create false and implausible testimony, Finkle and the Investigative Division signal to staff that they can engage in unnecessary and excessive use of force with impunity because attempts to cover up wrongdoing will not be questioned. In these and other ways described herein, Defendant Finkle has created and now perpetuates the unlawful practices and policies challenged in this

lawsuit, including the Unconstitutional Use of force Practice.

**NINETY-THIRD:** Department policy and practice is to have the reports filed by staff at Department jails regarding use of force incidents and the reports of the subsequent investigations conducted by supervisors at the jails, forwarded to the Department's central office for further investigation.

**NINETY-FOURTH:** Submission of reports to the DOC's central office put the Deputy Commissioner of Integrity and Policy (Defendant Finkle), the Deputy Chief of Security' (Defendant LaBruzzo), the Deputy Chiefs of Department (Defendant LaBruzzo), the Chief of Department (Defendant Hourihane, Davis and Mirabal) and the Commissioner (Defendant Schriro) on notice that unconstitutional practices and policies, including the Unconstitutional Use of Force Practice, have been and are rampant throughout the Department jails.

**NINETY-FIFTH:** Among other things these reports:

(1) document frequent and numerous instances in which correction staff inflict serious injuries, including head and facial trauma, multiple blunt trauma to the body, and perforated ear drums, on inmates;

(2) conclude, with rare exceptions, that the inmate instigated the incident and that the incident was caused by similar conduct such as an inmate "making a threatening gesture" or "taking a menacing stance" and needed to be "subdued" or "restrained";

(3) frequently identify the location of the incident to be in an isolated area where there are no cameras and few people around, such as the facility receiving room, an inmate's cell, or a similarly isolated area;

(4) often involve a single inmate, who in some cases may even be naked, and who implausibly is reported to have assaulted an officer who is accompanied by other staff members; and

(5) identify that certain correction officers and captains have been involved in a disproportionate number of these incidents.

Despite the irregularities and implausible explanations that DOC central office staff is aware of, the investigative policies and practices continue to be inadequate to an extent that violates the Constitutional rights of the inmates under Rikers Island supervision.

**NINETY-SIXTH:** In the above ways and other ways described herein these Defendants created and now perpetuate the unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

**NINETY-SEVENTH:** The Department's investigative process has been and is inadequate on all levels. The supervisory staff of Department jails, including Defendants Hall and Johnson have consistently conducted biased and incomplete investigations into complaints of officers' use of unnecessary and excessive force and have permitted officers who have violated Department guidelines to escape any discipline for their misconduct.

**NINETY-EIGHTH:** Investigations conducted by the central office, including Defendants Schriro, Finkle, Davis, Hourihane, LaBruzzo, Mirabal, regarding officers' use of unnecessary and excessive force reflect the same bias in favor of uniformed staff. This improper conduct has continued for over twenty-five years and has not been corrected since the district court first found that the central office's use of force investigations were biased at the Correctional Institution for Men (a DOC facility). *Fisher v. Koeher*. 692 F.Supp. 1519, 1553-57 (S.D.N.Y. 1988), aff'd, 902 F.2d2 (2d Cir. 1990).

**NINETY-NINTH:** Although the Department agreed in 1998 to implement specific,

court-ordered remedies for these long-standing deficiencies in the investigation of staff use of force in the CPSU (*Sheppard v. Phoenix*, 91 Civ. 4348 (RPP) (S.D.N.Y.) (Order Approving Stipulation for Entry of Judgment. July 10, 1998)), it has since abandoned those demonstrably successful measures and refused to apply those, or similar, reforms throughout the jails resulting in continued biased investigations. In these and other ways described herein, these Defendants created and now perpetuate the unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

**ONE HUNDREDTH:**   In addition to her routine review of the Department's reports, the Deputy Commissioner of Integrity and Policy, Defendant Finkle, has also received numerous letters from the Prisoners' Rights Project of the Legal Aid Society alleging serious physical abuse of a significant numbers of inmates by uniformed staff in Department jails for the past several years.

**ONE HUNDRED FIRST:** Many of these letters identify specific staff members as having engaged in repeated assaults on inmates.

**ONE HUNDRED SECOND:** Defendant Finkle has taken no meaningful steps to address the deplorable facts repeatedly brought to her attention by these letters. In these and other ways described herein, this Defendant created and now perpetuates the unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

**Past and Current Litigation Has Placed Supervisory Staff "Squarely on Notice as to the Nature, Causes and Persistence of Excessive Force in the City's Jails**

**ONE HUNDRED THIRD:** Since 2002, senior supervisors and uniformed staff in DOC have been sued repeatedly by inmates alleging staff beatings and cover-up. Many of these cases, which resulted in favorable judgments for plaintiffs following settlement, include remarkably similar allegations of misconduct. *See, e.g.*:

- Reynolds v. City of New York, 11 Civ. 621 (S.D.N.Y.) (alleging beat-up in GMDC resulting in shoulder fracture and loss of consciousness; settled for $200,500);

- Mull v. City of New York, 08 Civ. 8854 (S.D.N.Y.) (alleging beat-up in AMKC resulting in diffuse axonal injury to brain, partial loss of eyesight and partial loss of hearing and requiring the victim to take seizure medications; settled for $550,000);

- Belvett v. City of New York, 09 Civ. 8090 (S.D.N.Y.) (alleging beat-ups at GMDC and RNDC resulting in facial fracture; settled for $350,000);

- Youngblood v. Baldwin, 08 Civ. 5982 (S.D.N.Y.) (alleging beat-up at GRVC resulting in skull laceration and broken nose; settled for $240,000);

- Williams v. City of New York, 07 Civ. 11055 (S.D.N.Y.) (alleging beat-up in OBCC resulting in fractured jaw and facial bones and torn earlobe; settled for $202,500);

- Williams v. City of New York, 09 Civ. 5734 (S.D.N.Y.) (alleging beat-up in RNDC resulting in laceration to head; settled for $87,500);

- Lee v. Perez, 09 Civ. 3134 (S.D.N.Y.) (alleging beat-up at NIC resulting in multiple rib fractures, a spinal fracture and a collapsed lung; settled for $300,000);

- Shuford v. City of New York, 09 Civ. 945 (S.D.N.Y.) (alleging two beat-ups at RNDC resulting in facial fractures; settled for $375,000);

- Diaz v. City of New York, 08 Civ. 4391 (S.D.N.Y.) (alleging beat-ups involving two inmates,

one at AMKC and one at OBCC; settled for $400,000 and $450,000, respectively);

- Lugo v. City of New York, 08 Civ. 2931 (S.D.N.Y.) (alleging beat-up at NIC resulting in orbital fracture; settled for $185,000);

- Cuadrado v. City of New York, 07 Civ. 1447 (S.D.N.Y.) (alleging beat-up at RNDC resulting in punctured lung; settled for $175,000);

- Scott v. City of New York, 07 Civ. 3691 (S.D.N.Y.) (alleging beat-up at GMDC resulting in orbital fracture; settled for $175,000);

- Pischeottola v. City of New York, 06 Civ. 2505 (S.D.N.Y.) (alleging beat-up at RNDG resulting in punctured lung requiring chest tube; settled for $150,000);

- Rice v.N.Y.C. D.O.C, 03 Civ. 582 (S.D.N.Y.) (alleging beat-ups of two inmates at GRVC resulting in collapsed lung and contusion hematomas, in one case, and in neck and spinal cord injuries causing permanent stutter, in the other; settled for $255,000 and $590,000, respectively);

- Joseph v. N.Y.C. D.O.C, 02 Civ. 9219 (S.D.N.Y.) (alleging beat-up at GRVC resulting in orbital fracture; settled for $375,000).

**ONE HUNDRED FOURTH:** Senior correction supervisors possess actual knowledge of brutality in the City's jails from the five inmate class actions that have been filed over the last three decades.

**ONE HUNDRED FIFTH:** These lawsuits exposed the mechanics of the Unconstitutional Use of Force Practice at individual commands and, in the case of *Ingles*, throughout the entire DOC system.

**ONE HUNDRED SIXTH:** These suits also identified the substantive causes of staff

brutality and won reforms which, if they had been thoroughly and systematically implemented on a long-term basis, likely would have effectively ended the unconstitutional practices and policies at the Department's jails challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

**ONE HUNDRED SEVENTH:** In *Ingles*, for example, this court approved a settlement agreement that required the installation of wall-mounted cameras in DOC jails, the revision of the DOC's use of force directive, modifications to staff training, the overhaul of procedures for investigations by the Integrity and Policy Divisions, the photographing of inmates following uses of force, the creation of a system to track uses of force by individual officers, and ongoing monitoring by plaintiffs' counsel.

**ONE HUNDRED EIGHTH:** At all times relevant to this Complaint, the supervisory defendants herein: Newton, Hall, Johnson, Finkle, LaBruzzo, Hourihane, Davis, Mirabal, Schiro not only knew that these reforms had not been instituted in all jails or were no longer in effect, but consciously and affirmatively determined not to extend them system-wide, despite knowing their efficacy.

**ONE HUNDRED NINTH:** The supervisory defendants have regularly received internal reports clearly demonstrating that the unconstitutional practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice, have remained pervasive throughout the DOC jails. In light of this evidence, the supervisors' decision not to institute lasting reforms, but rather to abandon those demonstrably effective reforms at the termination of any period of meaningful oversight, constitutes and demonstrates a policy of deliberate indifference toward the rights and safety of the plaintiff, JOSE BAUTISTA.

**ONE HUNDRED TENTH:** The discovery obtained in the prior class actions placed senior supervisors on notice as to the existence of the unconstitutional practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice, the manner in which those practices and policies have operated, and the role that supervisory staff played in maintaining and perpetuating such practices and policies, including the Unconstitutional Use of Force Practice.

**ONE HUNDRED ELEVENTH:** The discovery provided in Sheppard included reports of over a thousand incidents and the investigations conducted in connection with these incidents over a ten-year period (1988-1998). This discovery demonstrated, *inter alia*, current and former supervisors' deliberate indifference to reported incidents of violence, current and former supervisors' encouragement of violence in the jails, pervasive acts of brutality by uniformed staff, cover-up of these incidents through the preparation of false reports, a systemic failure to ensure unbiased and thorough investigations of use of force incidents, supervisors' failure to engage in prompt and meaningful discipline of staff, and supervisors' long-standing failure or refusal to hold uniformed staff accountable for their misconduct.

**ONE HUNDRED TWELFTH:** The discovery provided in Ingles included reports of over a thousand incidents and approximately 4000 24-hour reports collected over a four-year period (2000-2003). This discovery demonstrated that (1) both Wardens and headquarters staff knew, but almost entirely failed to address, the fact that uniformed staff routinely employed offensive and retaliatory tactics and techniques that caused needless physical pain and injury rather than defensive control tactics that could achieve equal or greater control while significantly reducing or minimizing injuries to inmates and staff; (2) the DOC failed to train its officers in how to apply

self-defense techniques that achieve necessary levels of control without relying on impact strikes to the head and other vulnerable parts of the body; (3) facility-level and headquarters-level investigations into uses of force betrayed bias against inmates and in favor of staff, as well as lack of thoroughness on the part of investigators; and (4) DOC supervisory staff—from Wardens to Chiefs to Deputy Commissioners and the Commissioners themselves—possessed ample knowledge of the pattern of brutality in the jails, and of the inadequacy of DOC investigations into unnecessary and excessive uses of force.

**ONE HUNDRED THIRTEENTH:** Given supervisors' knowledge about the nature and causes of brutality in the jails as demonstrated through the discovery in prior litigation, supervisors' knowledge that the measures intended to remedy such brutality were no longer being applied (a result of their decisions, as described *supra*), supervisors' awareness of continuing complaints and litigation arising from alleged acts of officer brutality in the jails, supervisors' possession of regularly-circulating reports recording the extent and severity of violence in the jails and more particularly at OBCC, and the other facts and circumstances alleged herein—supervisors knew and know that the systemic failures underlying the unconstitutional practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice, have continued unabated.  In light of this knowledge, the supervisory Defendants' actions, inactions and decisions, as alleged herein, constitute and demonstrate a policy of deliberate indifference toward the rights and safety of inmates under Department control and more particularly the plaintiff JOSE BAUTISTA. In these and other ways described herein, these Defendants have been, and are, key to the creation and perpetuation of unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

**Supervisors Permit and Encourage their Subordinates to Engage in Excessive Use of Force at No Detriment to their Careers**

**ONE HUNDRED FOURTEENTH:** Despite their knowledge of ongoing abuses in the City's jails under the unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice, supervisory staff retains correction officers and captains with demonstrated histories of misconduct to use unnecessary and excessive force against inmates and refuses to transfer them to non-contact positions. In some cases, e.g., Defendant LaBruzzo, staff with such demonstrated propensities have even been promoted to positions of increased responsibility. As supervisory personnel themselves, Jorgensen, and LaBruzzo possess first-hand knowledge of the scope and severity of the unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice, based in part on their own historic actions as correction officers and captains.

**ONE HUNDRED FIFTEENTH:** As a captain assigned to the CPSU in the years between 1996 and 2003, LaBruzzo was personally implicated in no fewer than six use of force incidents. Prior to those charges, the Legal Aid Society advised the City by letter that LaBruzzo had been involved in a number of use of force incidents in which inmates had suffered serious injuries. LaBruzzo was subsequently promoted and is currently Deputy Chief of Department.

**ONE HUNDRED SIXTEENTH:** Notwithstanding the fact that high-ranking officials in Department jails and in the Department's central office knew and know that the unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice, result in unnecessary and excessive force being used on inmates, Defendants Schriro, Finkle, Hourihane, Davis, Mirabal, and LaBruzzo have failed to implement measures that would curb the unlawful conduct of their subordinates, and instead have taken actions to perpetuate them.

**ONE HUNDRED SEVENTEENTH:** These Defendants routinely dismissed inmates' complaints of staff beatings, even when the correction officers and captains allegedly involved failed to report a use of force and the inmate was seriously injured; when the initiate's injuries were obviously more serious than the staff accounts of their actions would suggest; and when the same correction officers and captains repeatedly reported essentially the same scenarios to describe incidents in which different inmates were injured.

**ONE HUNDRED EIGHTEENTH:** Pursuant to the Department's written policy, "Monitoring Uses of Force," codified as DOC Directive 5003, Department supervisors collect extensive information on every correction officer's use of force history.

**ONE HUNDRED NINETEENTH:** Officers who use force three or more times within a calendar quarter are required to be interviewed by the facility commander, who must also read the underlying reports from the use of force incidents in which the office was involved and "ascertain whether force was necessary or whether a pattern of inappropriate behavior has emerged." (Directive 5003(IV)(C)( 1).

**ONE HUNDRED TWENTIETH:** Additionally, pursuant to the *Ingles* settlement, there is a system to track officers' uses of force so that facility commanders and the Investigation Division can investigate incidents. Defendant supervisors thus know the use of force histories of their staff members, yet have failed to take reasonable measures to curb the pattern of unnecessary and excessive force. Indeed, by their conduct they have perpetuated it.

**ONE HUNDRED TWENTY-FIRST:** Every month, senior Department staff, including the supervisory Defendants identified in this Complaint, meets to review conditions and

performance in the jails pursuant to the Department's "Total Efficiency Accountability Management System" ("TEAMS") program. In TEAMS meetings, they discuss use of force in the jails and the response thereto, further apprising senior Department staff of use of force incidents in the jails, how they are reported, and the nature and severity of injuries sustained by inmates. There are still over 1000 use of force reports filed each year in the Department.

**ONE HUNDRED TWENTY-SECOND:** Despite Directive 5003 and the TEAMS program, with rare exceptions uniformed staff whose misconduct is brought to the attention of supervisory personnel continue to work with inmates in Department jails without any substantial disciplinary action being taken against them. Many of these staff members are simply transferred from one jail to another, where their misconduct continues unchecked.

**ONE HUNDRED TWENTY-THIRD:** The information available through Directive 5003 and the TEAMS initiative has not been utilized by Wardens or Deputy Wardens of Security in Department jails to reduce the number of incidents of excessive or unnecessary use of force in the jails. The fact that physical abuse by officers remains unrestrained has led the staff to believe—reasonably—that inmates may be beaten with impunity.

**ONE HUNDRED TWENTY-FOURTH:** In these and other ways described herein, these Defendants are key to the creation and perpetuation of unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

### Liability of the City of New York

**ONE HUNDRED TWENTY-FIFTH:** Prior to and at the time of the assaults upon the Plaintiff there existed in Department jails a pattern and practice of physical abuse of inmates by

the uniformed staff assigned to these jails. The elements of this pattern are described *supra*. The pattern of unrestrained physical abuse by uniformed staff is now so institutionalized as to constitute a policy or custom that has caused the deprivation of Plaintiffs' constitutional rights.

**ONE HUNDRED TWENTY-SIXTH:** Prior to and at the time of the assault upon the Plaintiffs there existed throughout the Department a pervasive pattern and practice of failing to conduct unbiased and thorough investigations of use of force incidents, and to discipline staff meaningfully and promptly for misconduct.

**ONE HUNDRED TWENTY-SEVENTH:** The Department, through its Commissioners, Chiefs of Department, Chief of Security, and Deputy Commissioner of Integrity and Policy, has refused to hold accountable high-ranking supervisors—captains, assistant deputy wardens, deputy wardens, and wardens—in the face of frequent and significant misconduct, over a period of years, by these supervisors and by the officers they supervise.

**ONE HUNDRED TWENTY-EIGHTH:** The Department has also failed to use its promotional authority to punish—or decline to reward—supervisors who fail to perform their jobs adequately, thereby sending a clear message that a supervisor in a Department facility will suffer no damage to his or her career for turning a blind eye to evidence of staff misuse of force or for failing to properly investigate incidents in which inmates are injured by staff. This pattern, and the longstanding failure or refusal to supervise uniformed staff, including supervisory staff, is so institutionalized as to constitute a policy of tolerating and authorizing physical abuse of inmates.

**ONE HUNDRED TWENTY-NINTH:** This policy of intentional cover-up and of allowing staff at all levels to act with almost complete impunity has caused and is causing the

deprivation of Plaintiffs' constitutional rights.

**ONE HUNDRED THIRTIETH:** Prior to and at the time of the assaults upon the Plaintiff, the Department failed to train staff to use force in conformity with the Department's own official written directives and the requirements of the United States and New York laws. Because of this systematic failure, staff has not been and is not effectively trained as to the circumstances under which force can lawfully be employed, the proper means of using force, or the amount of force that may permissibly be used.  Consequently, staff regularly use force to punish or retaliate against inmates for minor or imagined offenses, use weapons or techniques in impermissible manners or on inappropriate occasions, use "street fighting" techniques not prescribed by Department directives, use items such as walkie-talkies as weapons with which to subdue inmates, use force after the need for force has ended, and use more force than is necessary under the given circumstances.

**ONE HUNDRED THIRTY-FIRST:** Department staff are not trained in minimally injurious use of force techniques, and do not receive ongoing training so that they can implement them in practice. This failure to train staff has caused and causes the deprivation of Plaintiff's constitutional rights.

**ONE HUNDRED THIRTY-SECOND:** The City has been and is on actual notice of the deplorable, long-standing, widespread and institutionalized unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice, through among other things the prior lawsuits described herein and the facts uncovered in discovery therein.

**ONE HUNDRED THIRTY-THIRD:** In these and other ways described herein,

defendant City is key to the creation and perpetuation of unlawful practices and policies challenged in this lawsuit, including the Unconstitutional Use of Force Practice.

**ONE HUNDRED THIRTY-FOURTH:** Defendant City, through DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of JOSE BAUTISTA'S beating.

**ONE HUNDRED THIRTY-FIFTH:** This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice or custom and led to the assault upon Mr. Bautista. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which Mr. Bautista was subjected to a brutal beating, defendant City has deprived Mr. Bautista of rights, remedies, privileges, and immunities guaranteed to every person of the United States., secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourth, Eighth and Fourteenth Amendments to be free from unnecessary and excessive force and retaliation. As a direct and proximate result of the policy, practice and custom detailed above, Mr. Bautista sustained the damages alleged

**ONE HUNDRED THIRTY-SIXTH:** In assaulting, battering, and threatening Mr. Bautista, or standing by and failing to intervene when Mr. Bautista was assaulted, the individual correction officers, acting in their capacities as DOC officers, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon Mr. Bautista.

**ONE HUNDRED THIRTY-SEVENTH:** Defendants LaBruzzo, Finkle, Hourihane.

Newton, Hall, Davis, Mirabal, and Schriro, their officers, agents, servants, and employees were responsible for Mr. Bautista's assault and battery. Defendant City, as employer of each of the Defendants, is responsible for their wrongdoing under the doctrine *of respondeat superior.* As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Bautista sustained the damages alleged.

**ONE HUNDRED THIRTY-EIGHTH:** The conduct of Defendants   LaBruzzo, Newton, Hall, Finkle, Hourihane, Davis, Mirabal, and Schriro, and the City of New York, all as described in this Complaint, violated Mr. Bautista's rights under Correction Law §§500-k and 137(5), to be free from degrading treatment and physical abuse. Defendant City, as employer of each of the Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.* As a direct and proximate result of the misconduct and abuse of authority detailed above, Mr. Bautista sustained the damages alleged.

## FACTUAL AVERMENTS

**ONE HUNDRED THIRTY-NINTH:** The events herein complained of began at or about 6 P.M. on the 9th day of January 2013 at the residence of plaintiffs located at 35 Stratford Road, in the City and State of New York, County of Kings.

**ONE HUNDRED FORTIETH:** At approximately 6 o'clock in the afternoon, New York City Police Officer Andrew J. Minella, Shield No. 7463 of the 290 Command and other officer(s) arrested plaintiff JOSE BAUTISTA at his residence.

**ONE HUNDRED FORTY-FIRST:** Plaintiff JOSE BAUTISTA was transported to the 070th Precinct in the City and State of New York, County of Kings, and charged with crimes

including Assault in the Third Degree; Menacing in the Third Degree and Harassment in the Second Degree.

**ONE HUNDRED FORTY-SECOND:** Plaintiff JOSE BAUTISTA was transported from the 070th Precinct to Brooklyn Central Booking and was thereafter arraigned on the aforementioned charges before a Judge of the Criminal Court of the City of New York, County of Kings, on January 10, 2013.

**ONE HUNDRED FORTY-THIRD:** The condition for release from custody set by the arraignment Judge, Judge Antignani on January 10, 2013, was either two hundred and fifty ($250) dollars cash or insurance bond; the plaintiff JOSE BAUTISTA was unable to post bail at arraignment and he was taken into the custody of the New York City Department of Correction following his arraignment.

**ONE HUNDRED FORTY-FOURTH:** Plaintiff JOSE BAUTISTA was transported from the Criminal Court of the City of New York, County of Kings, located at 120 Schermerhorn Street to Rikers Island Correctional Facility and jailed at Otis Bantum Correctional Center ("OBCC"), which is one of the jails at Rikers Island.

**ONE HUNDRED FORTY-FIFTH:** Plaintiff, JOSE BAUTISTA, was placed in a cell OBCC in a location known as R/R Pen 7 along with other incarcerated persons.

**ONE HUNDRED FORTY-SIXTH:** Plaintiff, JOSE BAUTISTA, was in fear of the incarcerated persons with whom he shared the cell at OBCC and notified a Correctional Officer that he wanted to be moved from the cell because he believed he would be attacked by other

incarcerated persons in his cell; plaintiff JOSE BAUTISTA was not moved from the cell.

**ONE HUNDRED FORTY-SEVENTH:** While in the cell at OBCC, plaintiff, JOSE BAUTISTA, attempted suicide by hanging himself; the plaintiff made two attempts to hang himself; his first attempt was unsuccessful because the makeshift noose did not successfully hold to the location where plaintiff tied or attached it; plaintiff's second suicide attempt by hanging was interrupted by the intervention of one or more inmates in his cell.

**ONE HUNDRED FORTY-EIGHTH:** While plaintiff, JOSE BAUTISTA, was hanging from a makeshift noose or rope so as to kill himself, the plaintiff was held by an inmate or inmates who prevented his strangulation and called out loud for help.

**ONE HUNDRED FORTY-NINTH:** OBCC had video cameras which recorded the vicinity of the cell where the plaintiff JOSE BAUTISTA was housed and where he attempted to hang himself on each occasion but correction officers were either not monitoring the camera feed or were monitoring the feed but chose not to come to the aid and assistance of Mr. Bautista until inmates in the cell yelled for help.

**ONE HUNDRED FIFTIETH:** The New York City Department of Correction and individually named defendants failed to adequately monitor the cell and failed to respond to the location where plaintiff  JOSE BAUTISTA was before and during his attempted suicide by hanging; although the location was monitored by video camera which recorded the vicinity of the cell and plaintiff made two suicide attempts, there was no response from correction officers until inmates called for them.

**ONE HUNDRED FIFTY-FIRST:** One or more of the individually named Correction Officers, C.O. DAIN DEALLIE, Shield 18770, C.O. MARVIN CHARLES Shield 17619, C.O. KEVIN BARNABY Shield 177767, C.O. FITZGERALD DAVID Shield 5802, C.O. RAMOS, SHIELD 17575; C.O. RAYON SIMMONS, SHIELD 9320; AND C.O. JOHN DOE 1 THROUGH C.O. JOHN DOE 10 responded to the cell and cut or removed the makeshift noose while failing to hold or support the plaintiff, JOSE BAUTISTA, so as to prevent his fall when the makeshift noose was removed from the bar or location to which it had been attached and/or from the neck of the plaintiff.

**ONE HUNDRED FIFTY-SECOND:** JOSE BAUTISTA struck the ground and struck his head with great force upon the ground when he was permitted to fall.

**ONE HUNDRED FIFTY-THIRD:** Multiple individually named correction officer defendants proceeded to assault the plaintiff after he struck the ground; the plaintiff JOSE BAUTISTA was beaten about the abdomen and his face; testicles; legs; back; ankles; hands; upper and lower torso and upper and lower extremities by fists, elbows and knees.

**ONE HUNDRED FIFTY-FOURTH:** The individually named correction officers failed to properly respond to the medical and mental health needs of plaintiff in that they dropped him once they removed the makeshift noose and failed to prevent plaintiff from falling and striking his head upon the floor.

**ONE HUNDRED FIFTY-FIFTH:** Furthermore the individually named correction officers failed to immediately alert medical and psychiatric staff so that emergency medical care would respond to the cell where plaintiff was in immediate need of medical attention.

**ONE HUNDRED FIFTY-SIXTH:** The individually named correction officers permitted plaintiff to fall and then sadistically and maliciously beat him without cause or lawful justification; the  assault was so vicious that the intestines of the plaintiff were ruptured during the attack

**ONE HUNDRED FIFTY-SEVENTH:** In an effort to cover up the vicious assault on plaintiff, one or more correction officers stood guard at the entrance to the cell where the beating of plaintiff continued and the inmates who were inside of the cell and witnesses were removed from the cell.

**ONE HUNDRED FIFTY-EIGHTH:** The assault was captured by video.

**ONE HUNDRED FIFTY-NINTH:** The correction officers, aware that the brutal assault was being recorded, dragged the plaintiff off camera and continued to beat him.

**ONE HUNDRED SIXTIETH:** Other corrections officers failed to intervene to prevent the assault upon plaintiff which was committed by correction officers acting jointly, in concert with one another, and, by the individual defendant correction officers severally.

**ONE HUNDRED SIXTY-FIRST:** After being beaten, plaintiff JOSE BAUTISTA felt his stomach fill with fluid, gas, or both; he was unable to walk.

**ONE HUNDRED SIXTY-SECOND:** Plaintiff JOSE BAUTISTA was taken to the prison's clinic, where he vomited blood.

**ONE HUNDRED SIXTY-THIRD:** Plaintiff JOSE BAUTISTA was thrown roughly onto a chair and cuffed tightly, despite the injuries to his hand, thumb, ankle, and wrists.

**ONE HUNDRED SIXTY-FOURTH:** A corrections officer imitated the shape of a gun with his hand, pointed it at plaintiff JOSE BAUTISTA, and said "now you are going to die."

**ONE HUNDRED SIXTY-FIFTH:** Plaintiff JOSE BAUTISTA was taken by EMS to Elmhurst Hospital.

**ONE HUNDRED SIXTY-SIXTH:** The correction officers involved in the sadistic and malicious assault on plaintiff continued to cover up their unlawful, illegal, and unconstitutional actions *inter alia* by

(1) tampering with evidence and witnesses through the use of implicit and explicit threats to the witnesses,

(2) removing the detainee witnesses from the cell where the beating of plaintiff continued,

(3) preparing false and dishonest reports of the event,

(4) submitting false reports and providing false information to investigators that conducted the internal DOC investigation into the cause of the injuries to the plaintiff JOSE BAUTISTA.

**ONE HUNDRED SIXTY-SEVENTH:** DOC central office supervisors and the Warden of OBCC were informed of the assault/use of force upon the plaintiff.

**ONE HUNDRED SIXTY-EIGHTH:** DOC central office supervisors and the Warden of OBCC relied upon obviously false information so as to prevent the true facts of the criminal and sadistic conduct from becoming known to prosecutorial authorities and to prevent the arrest and prosecution of the individually named defendant perpetrators for reasons unrelated to legitimate penological concerns.

**ONE HUNDRED SIXTY-NINTH:** The supervisory defendants did so despite the

availability of evidence which showed that plaintiff was maliciously assaulted, that inmate witnesses were removed from the cell, and that corrections officers moved the plaintiff to an off-camera area so that the beating could continue.

**ONE HUNDRED SEVENTIETH:** This evidence, which included video recordings and reports of investigators with the DOC and the Inspector General's office, was known to the supervisory defendants or would have been known to them if they had made a reasonable inquiry, but the supervisory defendants failed to make reasonable inquiry for reasons unrelated to legitimate penological concerns.

**ONE HUNDRED SEVENTY-FIRST:** Supervisors and investigatory personnel with the DOC ratified and condoned the actions of the officers, delayed the investigation into the assault of the plaintiff JOSE BAUTISTA and failed to sanction, punish or prosecute the serious criminal conduct described hereinabove. All of this is due to and resulting from the policies and practices of supervisory officials including the Warden of the jails at Rikers Island and more particularly the Warden of OBCC.

**ONE HUNDRED SEVENTY-SECOND:** Following his assault, the plaintiff was forced to endure surgery and remained in treatment at Elmhurst Hospital where he was diagnosed with a perforated intestine and other injuries.

**ONE HUNDRED SEVENTY-THIRD:** Plaintiff suffered permanent injuries and will continue to suffer from pain and internal injuries including scarring, adhesions in the vicinity of the surgery, internal bleeding, ruptures and surgical repairs. He will likely require additional surgeries as well as complications not currently known with particularity.

**FIRST CAUSE OF ACTION**
**MUNICIPAL LIABILITYNEGLIGENT HIRING, SCREENING, RETENTION,**
**SUPERVISION AND TRAINING UNDER THE LAWS OF THE STATE OF NEW**
**YORK**
**(By JOSE BAUTISTA against the CITY OF NEW YORK)**

**ONE HUNDRED SEVENTY-FOURTH:** Plaintiff repeats, reiterates and re-alleges all of the allegations set forth above.

**ONE HUNDRED SEVENTY-FIFTH:** That Defendant, THE CITY OF NEW YORK, its employees, agents and/or servants, failed to take any necessary steps to prevent this occurrence, failed to properly train its employees, agents and/or servants in handling suicidal and/or mentally ill and/or severely depressed incarcerated persons, failed to control and supervise its employees, agents and/or servants, and failed to prevent the aforesaid pain, suffering and permanent injuries to the Plaintiff and were otherwise reckless, careless and negligent.

**ONE HUNDRED SEVENTY-SIXTH:** Defendant CITY negligently hired, screened, retained, supervised, and trained the individual defendants. Had the CITY adequately supervised and trained the individual defendants about the proper treatment of suicidal and mentally ill inmates and the proper and allowable use of force and had the CITY disciplined and punished errant correctional officers for the unlawful use of force in the past, the individual defendants would not have remained employed or would not have engaged in the unlawful and tortious conduct herein described .

**ONE HUNDRED SEVENTY-SEVENTH:** The defendants' acts and conduct were the direct and proximate cause of plaintiff JOSE BAUTISTA's injuries and damaged and violated his common law rights as guaranteed by the laws and Constitution of the State of New York.

**ONE HUNDRED SEVENTY-EIGHTH:** That as a result of the foregoing, plaintiff JOSE BAUTISTA was caused to sustain pain and suffering and permanent injuries both physical and emotional, costs and expenses and was otherwise damaged and injured.

### SECOND CAUSE OF ACTION
### NEGLIGENCE UNDER THE LAWS OF THE STATE OF NEW YORK
### (by plaintiff JOSE BAUTISTA against all defendants)

**ONE HUNDRED SEVENTY-NINTH:** Plaintiff repeats, reiterates and re-alleges all of the allegations set forth above.

**ONE HUNDRED EIGHTIETH:** The CITY OF NEW YORK by and through its Department of Correction knew of and disregarded the violent proclivities of the individual defendant correction officer whose conduct and omissions were the direct and proximate cause of plaintiff's injuries and damages.

**ONE HUNDRED EIGHTY-FIRST:** The individual defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff JOSE BAUTISTA. Their acts, omissions and conduct were the direct and proximate cause of plaintiff's injuries and damages and violated his common law rights as guaranteed by the laws and Constitution of the State of New York.

**ONE HUNDRED EIGHTY-SECOND:** The individual defendants' conduct alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of employment, duties and functions as NYC DOC correction officers, and/or while they were acting as the CITY's agents and employees, clothed with and/or invoking state power and/or authority, and, as a result the CITY is liable to plaintiffs for common law negligence pursuant to

the state common law doctrine of *respondeat superior.*

**ONE HUNDRED EIGHTY-THIRD:** As a result of the foregoing, plaintiff JOSE BAUTISTA was injured.

**ONE HUNDRED EIGHTY-FOURTH:** As a result of the foregoing, plaintiff JOSE BAUTISTA was seriously injured.

**THIRD CAUSE OF ACTION**
**ASSAULT AND BATTERY UNDER THE LAWS OF THE STATE OF NEW YORK**
**(by plaintiff JOSE BAUTISTA against all defendants)**

**ONE HUNDRED EIGHTY-FIFTH:** Plaintiff repeats, reiterates and re-alleges all of the allegations set forth above.

**ONE HUNDRED EIGHTY-SIXTH:** By the actions described above, the individual defendants did inflict assault and battery upon plaintiff JOSE BAUTISTA.

**ONE HUNDRED EIGHTY-SEVENTH:** The individual defendants' acts and conduct were the direct and proximate cause of plaintiff JOSE BAUTISTA's injuries and damages and violated his common law rights as guaranteed by the laws and Constitution of the State of New York.

**ONE HUNDRED EIGHTY-EIGHTH:** The individual defendants' conduct alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of employment, duties and functions as NYC DOC correction officers, and/or while they were acting as the CITY's agents and employees, clothed with and/or invoking state power and/or

authority and as a result the CITY is liable to plaintiffs for common law assault and battery pursuant to the state common law doctrine of *respondeat superior.*

**ONE HUNDRED EIGHTY-NINTH:** As a result of the foregoing, plaintiff JOSE BAUTISTA was injured.

**ONE HUNDRED NINETIETH:** As a result of the foregoing, plaintiff JOSE BAUTISTA was seriously injured.

## FOURTH CAUSE OF ACTION
### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. SECTION 1983 and 42 U.S.C. Section 1986 (By Plaintiff JOSE BAUTISTA against all individual defendants)

**ONE HUNDRED NINETY-FIRST:** Plaintiff repeats, reiterates and re-alleges all of the allegations set forth above.

**ONE HUNDRED NINETY-SECOND:** By repeatedly punching the plaintiff about the abdomen, face, head and body with great and extreme force, by kicking the plaintiff with feet and assaulting him with knees and elbows about the face, head and body, including the testicles and abdomen of plaintiff JOSE BAUTISTA, the individually named defendants maliciously and sadistically caused harm for no legitimate disciplinary purpose.

**ONE HUNDRED NINETY-THIRD:** For inflicting the aforesaid upon plaintiff in wanton disregard for the life of plaintiff who posed no threat to the correctional officers and thereby causing the plaintiff JOSE BAUTISTA to suffer among other injuries a ruptured intestine, and by the other acts and omissions described above, the individually named corrections officers acted under the color of state law and deprived the plaintiff JOSE BAUTISTA of his rights,

privileges and immunities secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution

**ONE HUNDRED NINETY-FOURTH:** Plaintiff JOSE BAUTISTA was deprived of his right to be free from cruel and unusual punishment.

**ONE HUNDRED NINETY-FIFTH:** Plaintiff JOSE BAUTISTA was deprived of his right to be free from the application of excessive force.

**ONE HUNDRED NINETY-SIXTH:** Plaintiff JOSE BAUTISTA was deprived of his right to be free from excessive force that amounts to punishment where the detainee is a pre-trial detainee and has not been convicted of the crime for which he is in custody.

**ONE HUNDRED NINETY-SEVENTH:** Plaintiff JOSE BAUTISTA was deprived of his right to be free from use of force with an intent to harm that shocks the conscience in that the use of force was not related to the legitimate object of securing compliance of the plaintiff under the facts and circumstances that were presented to the individual defendants.

**ONE HUNDRED NINETY-EIGHTH:** The conduct of the defendants demonstrated a deliberate indifference to the safety of the plaintiff and was excessive, arbitrary and without legitimate penological purpose and intended as punishment of the plaintiff; the individually named defendants named herein are liable to plaintiff in damages under 42 U.S.C. Section 1983

**ONE HUNDRED NINETY-NINTH:** Because of the knowledge of the proclivities of the individual correction officers for use of excessive force and the failure to have taken remedial action to keep said officers away from the plaintiff and having had the power to thereby prevent

the commission of the aforesaid acts the individual supervisory defendants named herein are liable to plaintiff in damages under 42 U.S.C. Section 1986.

**TWO HUNDREDTH:** Because of the knowledge of and conspiracy to participate in the aforesaid acts against the person of the plaintiff each of the individually named defendants are liable to plaintiff in damages under 42 U.S.C. Section 1986.

**FIFTH CAUSE OF ACTION**
**MUNICIPAL LIABLILITY UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. SECTION 1983 FOR DELIBERATE INDIFFERENCE TO THE USE OF EXCESSIVE FORCE AGAINST PLAINTIFF**
**(By Plaintiff JOSE BAUTISTA against the City of New York)**

**TWO HUNDRED FIRST:** Plaintiff repeats, reiterates and re-alleges all of the allegations set forth above.

**TWO HUNDRED SECOND:** By reason of the foregoing, and by assaulting, battering and using unnecessary, excessive, brutal, sadistic, and unconscionable force, or failing to prevent other defendants from doing so, the defendants deprived defendant JOSE BAUTISTA of rights, remedies, privileges and immunities guaranteed to every person, secured by 42 U.S.C. Section 1983, including but not limited to rights guaranteed by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

**TWO HUNDRED THIRD:** Plaintiff JOSE BAUTISTA was deprived of his right to be free from unnecessary and excessive force.

**TWO HUNDRED FOURTH:** Plaintiff JOSE BAUTISTA was deprived of his right to be free from unreasonable force.